UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
Atlanta Division

PAMELA EDWARDS,
*for herself and on behalf of*
*all similarly situated individuals,*

          Plaintiff,

v.                                    CASE NO: 1:13CV3002-WSD-JFK

HORIZON STAFFING, INC.

          Defendant.

## AFFIDAVIT OF CLASS ADMINISTRATOR

Be it known that Dawn Michelle Chaffer appeared personally before the undersigned today, and upon her oath states:

1. I am an employee of Consumer Litigation Associates, P.C. ("CLA"), which has been appointed by Court Order dated March 27, 2014 (Doc. 18) to act as the Class Action Settlement Administrator responsible for preparing and mailing the Notices of Class Action Settlement to the Class Members; for establishing an informational website to provide information related to the class action settlement; for receiving returned notices and attempting to locate current addresses for Class Members; for answering telephone calls of Class Members and answering questions posed by Class Members regarding the settlement of this case.

2. On April 23, 2014, Defendant provided the Class List in the form of an excel spreadsheet. There were 289 names on the spreadsheet. Of the 289 names on the spreadsheet, a total of 23 names had no address. One was a duplicate.

3. On April 25, 2014, I mailed the 266 Notices to Class Members for whom we had an address. The Notice that I sent was approved by the court in its preliminary approval order.

4. Concerning the 23 names without addresses, Ms. Rotkis sought information from the Defendant about the 23 names without addresses to see if we could obtain any other identifying information. Defendant's counsel stated that Horizon Staffing did not have any information in its files other than what it had provided, which included the names of the job applicants, birthdates for all but one, and five social security numbers.

5. Ms. Rotkis instructed me to use www.whitepages.com and www.411.com to see if I could locate current addresses for any of the 23 names listed.

1

6.   Because the Class Members were all job applicants for Horizon Staffing, Inc., which only has locations in Atlanta and Savannah, Georgia, I focused the search on Georgia, generally.

7.   Using publicly available address search engines www.whitepages.com Ms. Rotkis initially located addresses for the following individuals: Treondois Farmer, Dennis Doboyouh

8.   The other 21 names were a little more difficult because we found many possible addresses, in some cases several dozen, possible addresses. Ms. Rotkis instructed me to seek information from both www.whitepages.com and www.411.com.

9.   I used www.411.com and searched for each of the remaining 21 class members for whom we did not have an address from the Defendant.

10.   I identified addresses for Levan Bolden, Kenya Cobbs, John Clavert and Garrad Bristol. I discovered that it was impossible to identify specifically an address for any of the remaining 18 names because the search returned too many possible matches. Despite having the birthdates, without other information or even a middle initial, I was unable to narrow the search results.

11.   I asked Viera Harrah, an office assistant in our office to see if she had any better luck searching for addresses on www.whitepages.com. She was able to identify addresses associated with the following names: Theresa McLean and Frederick Ponder.

12.   Of the original 23 Class Members for whom we did not receive addresses from the Defendant, we were able to locate addresses for 8 Class Members to whom we sent notices.

13.   Shortly after we mailed out the original batch of class notices, we began to receive the undeliverable class notices from the U.S. Postal Service.

14.   As of June 30, 2014, 89 Notices were returned. Of the 89 Notices returned, 7 had forwarding addresses, for which we forwarded the Notice and did not receive it back.

15.   Of the 82 that were returned undeliverable without a forwarding address, I created an excel spreadsheet containing the information about each class member from the Defendant in order to search for updated addresses using a commercially available database.

16.   I forwarded the excel spreadsheet to Nate Mason, who handles many information technology functions in our law firm, including using commercially available databases to locate class members.

17.   A commercially available database is generally one that sells consumer information for a fee. This is different from publicly available databases such as whitepages.com and 411.com. We limit our use of this type of service to finding class members' current addresses for the purpose of sending class notices.

18. Using Accurint, which is a commercially available database, Mr. Mason was able to locate new and presumably current, addresses for 73 of the 82 Class Members whose Notices were returned to us as undeliverable.

19. Using the new addresses I received from Accurint, I re-mailed the 73 Notices with new addresses. As of June 26, 2014, 31 were returned as undeliverable. After the final fairness hearing, two more notices have been returned. Therefore, a total of 33 notices have been returned as undeliverable as of the date of this declaration.

20. We were unable to locate current addresses for a total of 48 of the class members.

21. The class website at http://class-notice.com/horizon went live on April 25, 2014. The website is public and contains the following information: Complaint, Motion for Preliminary Approval, Memorandum in Support of Motion for Preliminary Approval, Class Action Settlement Agreement, and the Class Notice.

22. Exclusion requests must be postmarked by June 24, 2014. As of July 18, 2014, no Class Members requested exclusion.

23. Objections must be postmarked June 24, 2014. As of July 18, 2014, no Class Members served objections in writing.

24. CLA received no other correspondence from Class Members.

25. CLA received a total of 5 telephone calls from Class Members prior to the deadline for objections and exlcusions. Each telephone call was answered by a live person who assisted the caller with understanding the content of the Notice and the deadlines associated with objections and exclusions.

26. CLA incurred costs of $169.92 related exclusively to postage for mailing the Class Notices.

27. I am a legal assistant at CLA. I have worked in the legal field as a secretary, legal assistant and paralegal for over 25 years. I have worked for attorneys in private practice as well as the Commonwealth's Attorney.

28. In this case, I served as Class Administrator. I expended approximately 21.75 hours up to an including June 30, 2014. I have expended an additional 1.25 hours on this case since that date rechecking the facts and details to create this affidavit. I even re-researched the addresses for the 23 class members for whom we did not have an address.

29. I expended approximately 9.75 hours preparing the Class Notices. I received the approved Class Notice as a Word document, which I formatted to fit on four pages, front and back. I personally printed, collated, folded, and stuffed them into envelopes for mailing.

30. I expended approximately 3 hours reading the following documents in order to identify and enter deadlines onto our calendaring system and to assure that the attorneys

manage their time to meet the deadlines: the scheduling order, the local rules, the settlement agreement, class notices and preliminary approval order.

31. I expended approximately 2 hours converting the Class List into mailing labels, creating and affixing mailing labels to envelopes, applying postage to the envelopes, sealing envelopes and placing them in the U.S. Mail all by the deadline provided in the scheduling order. I conducted this search two times, just to be sure that I had done a thorough job.

32. I expended approximately 1 hour searching the internet, including 411.com, for the addresses of the class members for whom we did not receive addresses. I also spent another .25 hours relating this information to Ms. Harrah, explaining to her the task I wanted her to do by checking the internet and whitepages.com for additional addresses.

33. I expended approximately 1 hour (10 – 15 minutes per phone call) speaking to class members who called our office seeking information about the Class Notice. I have rounded this to 1 hour because I didn't keep precise time records for each phone call. I respond to many class member inquiries in this and other cases. In my experience, each call lasts at least ten minutes. More often than not, the class members who call, have not read the class notice or do not understand the class notice, and therefore I take however much time is necessary to ensure their questions are answered to the best of my ability. If I am not able to answer a question, I refer the phone call to one of the attorneys.

34. Since the date of the final fairness hearing, I have received another 5 phone calls in which class members were inquiring about the outcome of the final fairness hearing. I updated them and told them to call back in about two-three weeks. I expended approximately another hour of time taking phone calls since July 9, 2014.

35. I spent approximately 1.25 hours total converting the list of class members whose notices were returned as undeliverable into an excel spreadsheet in order to send it to Mr. Mason for an Accurint address check, working with Mr. Mason to make sure I had the right information in the spreadsheet.

36. I expended approximately 2 hours when I got the new addresses to convert the spreadsheet into new mailing labels. I then printed new notices, collated, folded and stuffed and sealed them. I affixed first class postage to each envelope and put them in the U.S. Mail.

37. I expended approximately 2 hours assisting Ms. Rotkis prepare for the final approval hearing, including by creating an affidavit in support of the motion for final approval and creating a binder for her use specifically at the hearing.

38. If this Settlement is approved, I will very likely spend another ten or more hours on the administration of this case. At a minimum, class members generally call to find out when their checks will be mailed. I respond to those calls. I will be responsible for seeing to it that the checks are prepared, signed and ready to be mailed. I will also print a letter to go along with the settlement checks, together I will collate, stuff, seal and affix postage to the envelopes and see to it that the checks are put timely in the U.S. Mail. From experience, there will likely be many more phone calls from class members who received

4

checks than from those who just received notices. The phone calls we usually get from class members who receive checks are to inquire whether the check is legitimate. I also get quite a few calls from banks and check cashing agencies to confirm that checks are legitimate. I also anticipate we will receive undeliverable checks, which we will search for new addresses using a commercially available database. When checks become stale, I will tally up the residual left in the fund in order to apply to the court for cy pres distribution.

39.    Out of the 289 Class Members, we were eventually able to locate addresses for 274 of them using the mailing list from Defendant, www.whitepages.com, www.411.com, Accurint, and the forwarding address label from the U.S. Postal Service. Of the 274 notices that I mailed, a total of 40 were undeliverable as of June 26, 2014. After the final fairness hearing, I received an additional two Notices that were returned as undeliverable. We never found addresses for 15 of the class members.

40.    To summarize:

Total Class members:            289
Total Undelivered notices:       42
Class members for
 Whom no address was found:  15

The foregoing is true and correct to the best of my knowledge.

*Dawn Michelle Chaffer*

STATE OF VIRGINIA
CITY OF NEWPORT NEWS

Subscribed to and sworn before me this 18th day of July, 2014.

Registration No: 7520644

Commission Expiration: 1/31/2016

Notary Public

YVONNE ALEXANDRA WRAY
Notary Public
Commonwealth of Virginia
7520644
My Commission Expires Jan 31, 2016

5